IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 0:24-cv-61926-SCOLA

THE REVEREND DR. TIMOTHY "CHAZ"
STEVENS

    Petitioner,

v.

THE SCHOOL BOARD OF BROWARD COUNTY,
FLORIDA

    Respondent.

_____/

## **DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT**

Defendant THE SCHOOL BOARD OF BROWARD COUNTY, FLORIDA, ("The School Board" or "SBBC") moves to dismiss this lawsuit pursuant to Federal Rule of Civil Procedure 12(b)(6).

### Background

The School Board removed this case to the United States District Court on the basis of federal question jurisdiction, specifically Plaintiff's claim pursuant to the First Amendment free exercise of religion. [ECF No. 1]. After The School Board filed a motion to dismiss, Plaintiff filed an amended complaint, introducing an alternative conflicting remedy under the Establishment Clause. [ECF No. 14] (Am. Compl.). Along with the amended complaint, Plaintiff also filed a motion for a temporary restraining order and requested a preliminary injunction. [ECF No. 15].

Plaintiff, acting as an individual, claims that the School Board is liable because he (and potentially his church) was denied the opportunity to display a banner on public school properties. [ECF No. 14] Am. Compl. ¶¶ 3-5. Plaintiff asserts three claims: 1) a violation of the

Religious Freedom Restoration Act (RFRA), pursuant to Florida Statute, Section 763.01; 2) a violation of the First Amendment of the United States Constitution; and, 3) a violation of religious advertising, pursuant to Florida Statute, Section 871.04. Notably, Plaintiff fails to identify or explain how he alone is entitled to sue as if he were a religious organization. *See generally* Am. Compl. He identifies himself as an ordained minister of the "Church of Satanology and Perpetual Soirée." Am. Compl. ¶ 1. His amended complaint inconsistently requests all religious banners be removed without articulating a specific cause of action to support that relief.

In this version of the complaint, Plaintiff describes some "doctrines" of the *Church of Satanology*, but at the same time explains it is "satirical;" he is an atheist, and does not explain how he, on behalf of his "church," would qualify for religious protection. Plaintiff then reveals he may not want a banner for Satanology; actually, he wants banners for other religious organizations removed. *Cf.* Am. Compl. ¶¶ 30, 40, 45 ("allow display" of "permit equal access to display") *with* Am. Compl. ¶¶ 9; 50-51 (requesting defendant remove all religious banners). Plaintiff, in short, is leading a political movement, not a religious one. He appears to be advancing a political agenda rather than a religious one.

The *Wikipedia* page Plaintiff cites demonstrates that Plaintiff is not sincerely religious and that *Satanology* is not a religion. *See* [ECF No. 18-1] (*Wikipedia* page). *First,* the wiki explains that Plaintiff is a national advocate for the "separation of church and state." *Id.* His activism for the removal of religion (not inclusion of his religion) is to permit *Festivus* polls in various Florida cities. *Id. Festivus* is a reference to a made-up holiday, from the comedy series, *Seinfeld*. *Id.* Plaintiff does not claim *Festivus* is a religious tradition of Satanology. Again, the *Wikipedia* page confirms "[h]is activism is always satirical. . . ." *Id.* "Stevens is an atheist." *Id.*

2

Plaintiff describes his "religion" as promoting "religious plurality" and "secularism," which includes "separation of church and state through public expressions of minority religious viewpoints." Am Compl. ¶ 6. Plaintiff alleges his religion contains "theist" and "non-theist" doctrine. *Id.* ¶ 7. Like his alternative conflicting claims for *mandatory* and *prohibitive* injunctive relief, Plaintiff alleges a claim for free exercise as a *religious atheist;* but, also seeks to wave the banner of victory by eliminating banners for all religious organizations. Am. Compl. ¶¶ 9-10. He claims titles of "doctor" and "reverend" within his Church, but never explains how he was bestowed these titles.

As more fully explained below, the amended complaint lacks sufficient allegations regarding religious doctrines, traditions, or beliefs to establish a valid claim of religious discrimination under Florida law or the U.S. Constitution. Moreover, Plaintiff lacks standing to assert an Establishment Clause claim under the First Amendment.

## STANDARD OF REVIEW

A well-pleaded complaint's factual allegations "must be enough to raise a right to relief above the speculative level"—with "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Legal conclusions, under this standard, "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Lastly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id*. at 678. (internal quotation marks omitted).

### I. Plaintiff's amended complaint should be dismissed because it is a "shotgun" pleading.

The Eleventh Circuit has identified four general categories of shotgun pleadings, which are impermissible pleadings. *See Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313,

1321 (11th Cir. 2015) ("Though the groupings cannot be too finely drawn, we have identified four rough types or categories of shotgun pleadings."). "The most common type" of shotgun pleading "is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint." *Id.* The second kind of shotgun pleading "is guilty of the venial sin of being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Id.* at 1321–22. "The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief." *Id.* at 1322–23. Lastly, "there is the relatively rare [shotgun pleading] asserting multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Id.* at 1323. "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* The Eleventh Circuit has condemned shotgun pleadings for "imped[ing] the administration of the district courts' civil dockets in countless ways." *PVC Windoors, Inc. v. Babbitbay Beach Constr., N.V.*, 598 F.3d 802, 806 n.4 (11th Cir. 2010).

The case at bar exemplifies these deficiencies: *First,* the amended complaint contains multiple counts where each count adopts the allegations of the previous counts creating unnecessary confusion. *Second,* the relief sought in the "Relief Requested" section (¶¶ 47–48 and 50–51) conflicts with or diverges from the relief sought in individual counts, leaving it unclear what Plaintiff ultimately seeks from the Court.

For these reasons, Plaintiff's amended complaint is subject to dismissal for failure to meet basic pleading standards. To cure these deficiencies, an amended complaint is required, *Weiland,* 792 F.3d at 1321, unless the Court determines dismissal with prejudice is warranted.

**II. Plaintiff fails to state a claim under the Religious Freedom Restoration Act because Plaintiff failed to allege his claim is based upon religious doctrine, traditions, or customs. (Count I).**

Plaintiff alleges a cause of action under Florida Statute Section 761.03. Plaintiff is asking for a judicial remedy to permit the Church of Satanology to advertise banners on various school fences. Am. Compl. ¶¶ 23-30. Plaintiff claims only that Satanology should be treated the same as other religions. He wants to be able to advertise; not preclude advertising for all *religious* organizations. *See generally* Compl., Count 1.

The Florida RFRA provides in pertinent part:

> (1) The government shall not substantially burden a person's exercise of religion, even if the burden results from a rule of general applicability, except that government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person:
>
> (a)  Is in furtherance of a compelling governmental interest; and
> (b) Is the least restrictive means of furthering that compelling governmental interest.

Fla. Stat. § 761.03(1).

Under the terms of the statute, a plaintiff has the burden of showing that: 1) he or she has engaged in the exercise of religion; and 2) that the government has substantially burdened this religious exercise. *Warner v. City of Boca Raton*, 64 F. Supp. 2d 1272, 1281 (S.D. Fla. 1999), aff'd, 420 F.3d 1308 (11th Cir. 2005).  As discussed below, Plaintiff has not demonstrated he has engaged in the exercise of religion. If that element has not been established, then the Court cannot analyze whether the government has substantially burdened this claimed religious exercise. *See id.*

5

"A review of the statute's history, its plain language and the application of ordinary rules of statutory construction reveal that the Florida legislature intended to limit the statute's coverage to conduct that, while not necessarily compulsory or central to a larger system of religious beliefs, nevertheless reflects some tenet, practice or custom of a larger system of religious beliefs. *Conduct that amounts to a matter of purely personal preference regarding religious exercise* does not fall within the ambit of the Florida RFRA." *Id.* (emphasis added). This is where Plaintiff's complaint falls short.

Plaintiff expects too much from the RFRA. Plaintiff cannot invoke the term, "church" and activate the protections of the RFRA. *See id.* His personal preference to advertise the Church of Satanology does not qualify for protection pursuant to the RFRA. *See id.* Relying on the amended complaint, the Court can only make assumptions, about Plaintiff's church's principles. In the amended complaint, Plaintiff references his *Wikipedia* page as a recitation of Plaintiff's and perhaps, Satanology's tenets. Am Compl. ¶ 8.

The "court's inquiry is extremely limited and purely factual: Does the practice in question reflect some tenet, custom or practice of a larger system of religious beliefs? Accordingly, the risk of courts taking sides in religious controversies is minimized." *Id* at 1284. "Similarly, a court's inquiry under the Florida RFRA is limited to whether a particular practice has some basis in the doctrines, traditions or customs of a religious tradition." *Id.* Based upon this complaint, the Court has no idea whether the desire to post a Satanology banner is based upon doctrines or religious tradition, or whether the proposed advertisement has some basis in Satan doctrines, traditions, or customs of a religious tradition. *See id.* This is particularly so, since Plaintiff (a one man political or religious movement) has revealed an alternative motive to remove all religious banners, by requesting that alternative and mutually exclusive relief.

6

In *Warner*, the court offered an even deeper analysis based upon expert testimony, but at this procedural point, the lawsuit explains Satanology is an umbrella church of atheists and theists, plurality and secularists – and those with minority religious views. Am. Compl. ¶¶ 6-7. But the amended complaint does not explain how placing a banner at a public school is a religious tenet of Santanology.

> In particular, a court should consider whether the practice: 1) is asserted or implied in relatively unambiguous terms by an *authoritative sacred text*; 2) is clearly and consistently affirmed in *classic formulations of doctrine and practice*; 3) has been *observed continuously, or nearly so, throughout the history* of the tradition; and 4) is *consistently observed in the tradition* as we meet it in recent times. If a practice meets all four of these criteria, it can be considered central to the religious tradition. If the practice meets one or more of these criteria, it can be considered a tenet, custom or practice of the religious tradition. If the practice meets none of these criteria, it can be considered a matter of purely personal preference regarding religious exercise.

*See id.* at 1285 (emphasis added).

Plaintiff has not alleged any text, doctrine, or practice of posting banners is traditionally observed in its history, in order to meet the standard of the RFRA. *See id.* In a conclusory fashion, Plaintiff claims that because the School Board did not permit him to post a Satanology banner, it imposed a "substantial burden" on his religious exercise. Plaintiff wants to purchase fence space at various local schools to tie a banner about Satanology. *See* Am. Compl. ¶ 3. But Plaintiff's complaint does not connect the religious doctrines of Satanology to placing banners on public school properties. A *Wikipedia* page is not a religious doctrinal text. Tying a banner to a fence is not a traditional religious ceremony. Unspecified non-party supporters of the Church of Satanology have "expressed frustration and marginalization," is alleged without explanation that the School Board has limited a traditional religious function of Satanology. *See* Am. Compl. ¶ 21. Under this statute therefore, Plaintiff is not entitled to relief. All the Court can conclude is

7

that the Church of Satanology is being used as a personal vehicle for Plaintiff's equivocating viewpoint.

### III. Plaintiff's First Amendment claim must be dismissed. (Count II).

  *A. Plaintiff's First Amendment claim must be dismissed because the School Board's official policy does not permit religious banners.*

The School Board's liability under Section 1983 cannot be based on *respondeat superior*. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). A school board is "liable under section 1983 only for acts for which [the school board] is actually responsible." *Marsh v. Butler County*, 268 F.3d 1014, 1027 (11th Cir.2001) (en banc). A school board is liable only when the board's "official policy" causes a constitutional violation. *Monell*, 436 U.S. at 694. A plaintiff must "identify a municipal 'policy' or 'custom' that caused [his] injury," in order to hold the board liable. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir.1998) (citations and internal quotations omitted).

Plaintiff attaches a memorandum to its complaint. Am. Compl. ¶ 13. That memorandum references Advertising Board Policy 6300. In short, the Policy 6300 precludes any banner with religious or political content. Thus, the policy is to prohibit banners sponsored by religious organizations. Because the policy excludes religious organizations from advertising, the Church of Satanology must also not be permitted to post a banner.

  *B. The School Board's does not have a practice or custom that permits religious banners.*

> Municipal liability may be based on, among other things, "a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Church v. City of Huntsville*, 30 F.3d 1332, 1342–43 (11th Cir. 1994). Under that theory, which is the only argument properly before us, a plaintiff may establish a policy or custom exists by showing a "persistent and wide-spread practice" and the government's actual or constructive knowledge of that practice. *Depew v.*

8

> *City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986). Generally, "random acts or isolated incidents are insufficient to establish a custom or policy." Id. In essence, to impose liability, [Plaintiff] must show: "(1) that [her] constitutional rights were violated; (2) that the municipality had a custom ... that constituted deliberate indifference to that constitutional right; and (3) that the ... custom caused the violation." *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004).

*Khoury v. Miami-Dade Cnty. Sch. Bd.*, 4 F.4th 1118, 1131 (11th Cir. 2021).

Since the School Board's policy is to not permit any political or religious signage, Plaintiff must sufficiently allege that a custom was in place that constituted "deliberate indifference to a constitutional right." *Id.* Plaintiff only cites to three occasions where three signs, two for Calvary Chapel, and one for "Potter's House" (Coral Springs Church) had posted signs. Am. Compl. ¶¶ 15-17. There are over 300 schools in the School Board of Broward County, Florida system.[1] Because these three instances do not equate to a persistent and widespread practice, the Court cannot conclude the School Board has an unofficial custom or policy contrary to the published policy. *See Khoury*, 4 F.4th at 1131.

Lastly, if Plaintiff did not identify a municipal official with final policymaking authority whose decision violated Plaintiff's constitutional rights, then he cannot support a First Amendment Free Exercise Clause claim. *See Chabad Chayil, Inc. v. Sch. Bd. of Miami-Dade Cnty., Florida,* 48 F.4th 1222, 1229 (11th Cir. 2022) (citing *Cuesta v. Sch. Bd. of Miami-Dade Cnty.*, 285 F.3d 962, 966-68 (11th Cir. 2002)). Because he failed to identify an individual policymaker, Plaintiff cannot support a *Monell* claim. *See id.*

---

[1] https://www.browardschools.com/domain/13954 (last visited Nov. 15, 2024).

*C. The School Board of Broward County's advertising policy is consistent with the First Amendment.*[2]

*First,* Plaintiff in the amended complaint demonstrates that the School Board's policy is to *preclude* all religious banners. On occasion, a banner sponsored by a religious organization has been posted, but has been removed. Am. Compl. ¶¶ 15, 16. Three separate examples of uneven compliance with a school board advertising policy do not support a *Monell* claim. *See supra,* § B. This is particularly true, since the School Board is in the administrative process of amending and reinforcing its policy, to support not become excessively entangled with religion. *See* [ECF No. 19-1] (Decl. Sullivan with exhibits).

"Under the *Lemon* test, the Establishment Clause is violated if the government's primary purpose is not secular-based, if the principal effect is to aid or inhibit religion, or if there is any 'excessive [government] entanglement; with religion." *S.D. v. St. Johns Cnty. Sch. Dist.*, 632 F. Supp. 2d 1085, 1091 (M.D. Fla. 2009) (citing *Lemon v. Kurtzman,* 403 U.S. 602, 613 (1971)). The secular purpose of the advertising policy is to permit schools to raise money for school related functions. *Am. Civil Liberties Union of Georgia v. Rabun Cnty. Chamber of Commerce, Inc.*, 678 F.2d 1379, 1389 (11th Cir. 1982), *reh'g denied and opinion modified,* 698 F.2d 1098 (11th Cir. 1983) (citing *Lemon,* 403 U.S. at 674)). The policy prohibiting all banners with religious content neither "advances nor inhibits religion," which is the goal of the First Amendment. *Id.* By prohibiting banners with religious content or named organizations prevents an "excessive government entanglement with religion." *Id.*

There is a tension between the Establishment and Free Exercise clauses. *S.D.,* 632 F.Supp. 2d at 1091. Government action meant to facilitate free exercise might be challenged as

---

[2] "Congress shall make no law respecting the establishment of religion, or prohibiting the free exercise thereof . . ." U.S. const., amend. I.

10

impermissible establishment and vice versa. *Id.* (citing Erwin Chimerinsky, *Constitutional Law: Principle and Policies,* 1140 (2d ed. 2002). When a school board permits messages on banners, it can be interpreted as endorsed government speech. *Mech v. School Board of Palm Beach County, Fla.,* 806 F.3d 1070, 1074-76 (11th Cir. 2015). That speech in this instance is support for principles of *Satan. See* Am. Compl. ¶ 3. For example, the School Board must be concerned about whether the Church of Satanology promotes values consistent with public school values. Government speech must not run afoul of the First Amendment's Establishment Clause by endorsing a religion. U.S. Const., amend 1. *Lemon,* 403 U.S. at 613. Said slightly different, if a banner on public school property is considered government speech, then the School Board is free to control the message. *See Mech,* 806 F.3d at 1074. ("If the banners are government speech, Mech loses.").

> When the government exercises "the right to 'speak for itself,' " it can freely "select the views that it wants to express." *Id.* at 467–68, 129 S.Ct. at 1131 (quoting *Bd. of Regents of Univ. of Wis. Sys. v. Southworth*, 529 U.S. 217, 229, 120 S.Ct. 1346, 1354, 146 L.Ed.2d 193 (2000)). This freedom includes "choosing not to speak" and "speaking through the ... removal" of speech that the government disapproves. *Downs v. L.A. Unified Sch. Dist.,* 228 F.3d 1003, 1012 (9th Cir.2000) (citing *Ark. Educ. Television Comm'n v. Forbes,* 523 U.S. 666, 674, 118 S.Ct. 1633, 1639, 140 L.Ed.2d 875 (1998)).

*Id.* Government speech is regulated primarily by the political process. *Id.* (citation omitted).

But if Plaintiff's proposed banner is considered government speech, then one problem a public school official might have with Satanology is that it contains the word, "Satan." *Satan*, (also known as the *Devil*) in Judeo-Christian texts represents an array of loaded meanings from the *evil inclination* to the *source of evil* in the world; and, everything contrary to public school values. Under Plaintiff's view, the Free Exercise Clause of the First Amendment should include, for example: "[Established terrorist religious organization] supports the First Amendment," and

the School Board will fail the *Lemon* test or a compelling state interest analysis, because in cited instances, banners associated with traditional churches were posted. Startup "religious" organizations with little and short doctrinal history or tenets do not qualify. *See Warner,* 64 F. Supp. 2d at 1281. The School Board's policy categorically prohibits religious speech and that policy is constitutionally permissible. *See Lemon,* 403 U.S. at 613; *Mech,* 806 F.3d at 1074.

**IV.    Plaintiff fails to state a claim under Florida Statute Section 871.04 (religious discrimination in advertising) because he does not allege a violation of the statute. (Count III).**

There are no cases analyzing Florida Statute Section 871.04. The plain language of the statute, however, offers sufficient guidance to the Court to dismiss this cause of action.

Florida Statute Section 871.04 states:

> (2)   No person, directly or indirectly, for herself or himself or for another, *shall* publish, post, broadcast by any means, maintain, circularize, issue, display, transmit, or otherwise disseminate or place in any manner *before the public with reference to an establishment* any *advertisement* that the patronage of any *person is not welcome*, or is objectionable, or is not acceptable *because of the person's religion*. No person shall cause or solicit another person to violate this section. (emphasis added).

The language of this statute prohibits publication in a public setting, an advertisement that a person is not allowed in the public establishment based upon a religious belief. *See id.* In this case, Plaintiff did not allege that a banner or sign was published that stated he was not welcome because he is a member of a certain religion -- in this case, Satanlogy. Because Plaintiff does not allege facts that violate the plain language of this statute, the cause of action in Count III must be dismissed. *See* §871.04(1), Fla. Stat. (2024).

**V.    Plaintiff does not have standing to pursue alternative First Amendment Establishment Clause remedy.**

To remind the Court of the obvious, if Plaintiff is seeking enforcement of the Establishment clause, then Counts I and III must be dismissed, since those counts seek remedies

12

relating to the free exercise of Satanology. If Plaintiff seeks to pursue a remedy under the Establishment Clause, then the Court must conduct an Article III standing analysis as to the Plaintiff.

> *A. Plaintiff cannot establish Article III standing under the First Amendment Free Exercise Clause.*

Article III standing concerns subject matter jurisdiction. *Smith v. GTE Corp.*, 236 F.3d 1292, 1299 (11th Cir. 2001) ("[A] court must zealously insure that jurisdiction exists over a case, and should itself raise the question of subject matter jurisdiction at any point in the litigation where a doubt about jurisdiction arises."). The party invoking federal jurisdiction bears the burden of establishing standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Plaintiff cannot seek an alternative remedy of a court order under the Establishment Clause because Plaintiff has not suffered a cognizable injury. Article III of the Constitution limits the jurisdiction of federal courts to actual "cases and controversies." U.S. Const. art. 3, § 2. Central to that requirement is that a litigant has "standing." This requires more than a "keen interest in the issue." *Hollingsworth v. Perry*, 570 U.S. 693, 700 (2013). To avoid dismissal, the plaintiff bears the burden of demonstrating (1) he has suffered "a concrete and particularized" injury, (2) that is "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the independent action of some third party [who is] not before the court," and (3) "likely … will be redressed by a favorable [judicial] decision." *Lujan*, 504 U.S. at 560-61 (internal quotation marks and citation omitted). Similar to Rule 12(b)(6) motions the Court can draw all reasonable inferences from plaintiffs allegations, but it may not "accept interferences that are unsupported by facts," or assume the truth of legal conclusions or give weight to "threadbare recitals of the elements of standing." *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015) (citation omitted).

13

The constitutional standing analysis is the same under the Establishment clause. *Am. Civil Liberties Union of Georgia v. Rabun Cnty. Chamber of Commerce, Inc.*, 678 F.2d 1379, 1383 (11th Cir. 1982) (11th Cir. 1983).

> Recently, however, in *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 102 S. Ct. 752, 70 L.Ed.2d 700 (1982), the Supreme Court has clarified this area of the law by retreating from a more specialized approach towards citizen standing under the Establishment Clause. Thus, in Valley Forge, the Supreme Court stated that there is no "sliding scale" of standing, *id.* at — —, 102 S.Ct. at 764, and that neither a mere spiritual stake in the outcome nor an intense commitment to separation of church and state is a "permissible substitute for a showing of injury itself." *Id.* at ——, 102 S. Ct. 766. Moreover, the Court expressly held that the mere "psychological consequence presumably produced by observation of conduct with which one disagrees" is not a cognizable injury.

*Id.* Like in *Valley Forge,* "the psychological consequence presumably produced by observation of conduct with which one disagrees ... is not an injury sufficient to confer standing under Art. III, even though the disagreement is phrased in constitutional terms." *Gardner v. Mutz*, 962 F.3d 1329, 1341 (11th Cir. 2020). Standing varies on whether a plaintiff raises an Establishment Clause claim or a Free Exercise Clause claim. *Flast v. Cohen*, 392 U.S. 83, 102 (1968). "Such inquiries into the nexus between the status asserted by the litigant and the claim he presents are essential to assure that he is a proper and appropriate party to invoke federal judicial power." *Id.*

Plaintiff does not allege he has a concrete injury merely by viewing a banner from a religious organization. The alleged harm is not "fairly … trace[able] to the challenged action of the defendant, and not … th[e] result [of] the *independent action of some third party* [who is] not before the court," – [unnamed employees]; and, "likely … will be redressed by a favorable [judicial] decision," – the Court would be enforcing the present and likely future School Board policy. *See Lujan*, 504 U.S. at 560-61 (emphasis added).

14

Plaintiff furthermore, does not attend a school in Broward County. He does not allege he is a parent of a child attending school in Broward County. Plaintiff has not alleged that he or his school aged children use any facilities at a Broward County property and saw any offending banners. Again, psychological consequences from viewing an offending banner are insufficient. *Gardner,* 962 F.3d 1329, 1341 (11th Cir. 2020); *City of Edmond v. Robinson*, 517 U.S. 1201, 1202 (1996) (Rehnquist, J., dissenting denial certiorari). Plaintiff does not even allege emotional or psychological damages. Thus, Plaintiff has no standing to claim any Establishment Clause violation or seek injunctive relief to stop the posting of any religious banners.

**VI.   Plaintiff is not entitled to a jury trial because he only requests equitable relief.**

  A. *Plaintiff is not entitled to reputational damages, nor can he establish standing based upon reputation.*

In paragraph 48 of the amended complaint, Plaintiff asks for legal damages based upon being an internationally known advocate for religious equality. He does not explain in previous allegations that the School Board damaged that reputation or by what means it did. Did the School Board do so intentionally or negligently? What cause of action supports these perceived reputational damages? Plaintiff does not say.  None of the causes of action alleged provide for reputational damages. The list of "relief requested," is a shotgun request for a remedy in a lawsuit asking for conflicting remedies.

  B. *Plaintiff is not entitled to jury trial since he did not ask for damages under law.*

Plaintiff is not entitled to a jury trial because he has not asked for legal relief. Plaintiff has only asked for equitable relief. Neither statutory cause of action in the amended complaint, (counts 1 & 3) provide for damages at law or expressly provide for a jury trial. Plaintiff is not entitled to reputational damages as argued above.

15

In determining whether a plaintiff is entitled to a jury trial, we first must interpret the statutes at issue. *Waldrop v. S. Co. Services, Inc.*, 24 F.3d 152, 155 (11th Cir. 1994) (citation omitted). If a statute explicitly provides for a jury trial, then a trial before a jury is merited. *Id.* "If the statute and its legislative history are silent regarding the right to a jury trial, then we must ask whether a jury trial is constitutionally required under the Seventh Amendment." *Id.* (citing *see also Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564 n. 3, 110 S.Ct. 1339, 1344 n. 3, 108 L.Ed.2d 519 (1990)). In contrast to compensatory damages, equitable rights should not be determined by a jury. *Id.* (citing *Curtis v. Loether,* 415 U.S. 189, 194, (1974)). "In general there is no right to a trial by jury of claims that historically were 'equitable,' such as actions for injunction, specific performance, and the like." *United States v. Barker*, 19 F. Supp. 2d 1380, 1385 n. 6 (S.D. Ga. 1998) (citing Charles Alan Wright, Law of Federal Courts, § 92, at 654 (5th Edition 1994)). Provided the amended complaint withstands dismissal, Plaintiff's request for a jury trial should be stricken because Plaintiff is only seeking equitable relief.

## CONCLUSION

This Court should dismiss this amended complaint with prejudice for failing to state a cause of action upon which relief can be granted.

Respectfully submitted,

___/s/__Robert Buschel_____
Robert C. Buschel
Florida Bar No. 0063436

BUSCHEL GIBBONS, P.A.
501 East Las Olas Boulevard
Third Floor
Fort Lauderdale, FL 33301
Tele:   (954) 530-5748 (direct)
Email: Buschel@BGlaw-pa.com

**CERTIFICATE OF SERVICE**

I hereby certify that on November 15, 2024, a copy of the foregoing was filed electronically using the Court's CM/ECF system, which will send notice of electronic filing to the Parties and all interested parties receiving notices via CM/ECF.

                        BUSCHEL GIBBONS, P.A.

                        By: /s/ Robert C. Buschel
                              Robert C. Buschel, Esq.

Dr. Timothy 'Chaz' Stevens
980 N. Federal Highway, Suite 110
Boca Raton, FL 33432