United States District Court
for the
Southern District of Florida

| The Reverend Dr. Timothy "Chaz" Stevens, Plaintiff, | ) ) ) ) ) ) ) | Civil Action No. 24-61926-Civ-Scola |
| v. | | |
| The School Board of Broward County, Florida, Defendant. | | |

### Order on the Defendant's Motion to Dismiss

This cause comes before the Court upon the Defendant's motion to dismiss the amended complaint. (ECF No. 18.) The Plaintiff has filed a response (ECF No. 24), and the Defendant has filed a reply (ECF No. 26). The Defendant has also filed a notice of supplemental authority. (ECF No. 29.) The Court has considered the briefing, the record, the relevant legal authorities, and is otherwise fully advised. For the reasons that follow, the Court **grants in part** and **denies in part** the Defendant's motion to dismiss. (**ECF No. 18**.)

### 1. Factual Background[1]

The Plaintiff, The Reverend Dr. Timothy "Chaz" Stevens, is an ordained minister of The Church of Satanology and Perpetual Soiree. (Amended Compl., ECF No. 14 ¶ 1.) The Church "promote[s] religious plurality, secularism, and the separation of church and state through public expressions of minority viewpoints." (*Id.* ¶ 6.) As such, "displaying banners with messages advocating for religious freedom and First Amendment principles is a form of sacred observance, deeply and doctrinally rooted in The Church's belief that such advocacy is a moral and spiritual obligation." (*Id.* ¶ 7.) Displaying banners with phrases such as "Satan Loves the First Amendment" "are essential to fulfilling [the Church's] religious mission." (*Id.*)

Between December 2023 and September 2024, the Defendant, the School Board of Broward County, Florida (the "school board"), allowed religious organizations, such as Calvary Chapel and Potter's House, to display banners

---

[1] Since the filing of the amended complaint and motion to dismiss, the Plaintiff has filed subsequent notices with purported evidence supporting his claims. (*See e.g.*, ECF No. 34, Plaintiff's Notice of Submission of Doctrinal Text as Evidence.) Even if the Court could consider this evidence, these filings would not impact the Court's ruling on the current motion.

at West Glades Middle School, in Parkland, Florida, and Coral Springs High School, in Coral Springs, Florida, respectively. (*Id.* ¶ 17.) Such displays "carried religious messages and were permitted without issue." (*Id.* ¶ 17.) These banners were displayed despite the school board's policy "prohibit[ing] using school facilities to promote religious, commercial, or political interests without board approval and requir[ing] that signage not be 'sectarian in nature.'" (*Id.* ¶18 (citation omitted).) Specifically, the policy states:

> [F]acilities owned or leased by the School Board shall not be used for advertising or otherwise promoting the interests of any commercial, religious, political or other non-district agency or organization except as permitted through Board approved agreements, School Board policies, or State Statutes.

(*Id.*)[2]

On October 2, 2023, Reverend Stevens submitted a request to Marjory Stoneman Douglas High School, in Parkland, Florida, requesting that it display a "Satan Loves the First Amendment" banner. (*Id.* ¶ 14.) On October 10, 2023, the school board denied the request for the banner without any explanation. (*Id.* ¶ 15.) At that time, a banner for the Calvary Church—which was on display at Marjory Stoneman Douglas High School—was removed. (*Id.*)

On October 5, 2023, Reverend Stevens made the same request to West Glades Middle School, in Parkland, Florida. (*Id.* ¶ 16.) On September 11, 2024, the school board denied that request and removed a banner for the Calvary Church that was being displayed at the middle school. (*Id.*)

Reverend Stevens alleges that the alleged unequal treatment of the Church of Satanology has "harm[ed] his international reputation as a religious advocate" and "[s]upporters of The Church have expressed frustration and marginalization[.]" (*Id.* ¶ 21.)

Based on these allegations, Reverend Stevens has brought three causes of action alleging violations of (1) the Florida Religious Freedom Restoration Act, Fla. Stat. § 761.03 ("FRFRA"), (2) the First Amendment (brought under 42 U.S.C. § 1983); and (3) Florida Statute § 871.04, which prohibits certain types

---

[2] On December 17, 2024, the school board adopted a new policy that "provide[s] better oversight" of the banner approval process by having "[a] regional superintendent [] approve requested banners." (Joint Interim Status Report and Status Report, ECF No. 36 at 6 (citing ECF No. 36-1).) But because Reverend Stevens has plausibly alleged an unofficial custom or policy of viewpoint discrimination (as the Court discusses below), the new policy does not affect the Court's analysis on the school board's motion to dismiss.

of discrimination in public accommodations.

## 2. Legal Standard

A court considering a motion to dismiss, filed under Federal Rule of Civil Procedure 12(b)(6), must accept all of the complaint's allegations as true, construing them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)) (cleaned up). A court must dismiss a plaintiff's claims if she fails to nudge her "claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

## 3. Analysis

For the reasons stated below, the Court denies the school board's motion to dismiss counts I and II but grants the school board's motion to dismiss count III.

### A. Whether the Amended Complaint is a Shotgun Pleading

The school board first argues that Reverend Stevens's amended complaint is a shotgun pleading because (1) "the amended complaint contains multiple counts where each count adopts the allegations of the previous counts creating unnecessary confusion," and (2) "the relief sought in the 'Relief Requested' section . . . conflicts with or diverges from the relief sought in individual counts, leaving it unclear what Plaintiff ultimately seeks from the Court." (Def.'s Mot., at 4.)

The Court disagrees. To start, the school board claims in its reply that Reverend Stevens did not respond to this argument and that it should be deemed admitted. (Def.'s Reply, at 2.) But Reverend Stevens clearly responded to the school board's argument. (*See* Pl.'s Resp., at 2.)

Moreover, while the amended complaint can certainly be clearer as to the relief requested—given that some of the relief is arguably in tension with one another—the amended complaint clearly delineates the causes of action, and within each cause of action provides unique allegations specific to that claim. (*See* Amended Compl., at 7-11.) The gravamen of all types of shotgun

pleadings is "that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the ground upon which each claims rests." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1323 (11th Cir. 2015). The amended complaint gives the school board adequate notice and is therefore not a shotgun pleading.

The school board's motion to dismiss on the basis that the amended complaint is a shotgun pleading is denied.

### B. Whether Reverend Stevens States a Claim under the FRFRA

Under the FRFRA, "a plaintiff has the burden of showing that: 1) he or she has engaged in the exercise of religion; and 2) that the government has substantially burdened this religious exercise." *Warner v. City of Boca Raton*, 64 F. Supp. 2d 1272, 1281 (S.D. Fla. 1999) (Ryskamp, J.). Only then does "the burden shift to the government to demonstrate that its action: 1) is in furtherance of a compelling governmental interest; and 2) is the least restrictive means of furthering that compelling governmental interest." *Id.*

Under the FRFRA, the exercise of religion means "an act or refusal to act that is substantially motivated by a religious belief, whether or not the religious exercise is compulsory or central to a larger system of religious beliefs." *Id.* (quoting Fla. Stat. § 761.02(3)). The statute thus covers "conduct that, while not necessarily compulsory or central to a larger system of religious beliefs, nevertheless reflects some tenet, practice or custom of a larger system of religious beliefs." *Id.*

The school board argues that Reverend Stevens "expects too much from the [F]RFRA" and that "[h]is personal preference to advertise the Church of Satanology does not qualify for protection pursuant to the [F]RFRA." (Def.'s Mot., at 6.) The school board relies on *Warner* and argues that "the Court has no idea whether the desire to post a Satanology banner is based upon doctrines or religious traditions, or whether the proposed advertisement has some basis in Satan doctrines, traditions, or customs of a religious tradition." (*Id.* (citing *Warner*, 64 F. Supp. at 1284.) Thus, to the school board, Reverend Stevens only states in a conclusory manner that the school board "imposed a 'substantial burden' on his religious exercise." (*Id.* at 7.) The school board also criticizes the Wikipedia article attached to Reverend Stevens's amended complaint, explaining that "[a] Wikipedia page is not a religious doctrinal text." (*Id.* at 7.) In its reply, the school board also argues that it has a compelling interest in banning religious advertisements on school grounds because it "must not run afoul of the Establishment Clause of the First Amendment." (Def.'s Reply, at 3 (citing *Capitol Square Review & Advisor Bd. v. Pinette*, 515

U.S. 753, 761-62 (1995) and *Warner*, 64 F. Supp. 2d at 1272).)

Reverend Stevens argues that "[t]he rejection of the Plaintiff's banner does not further any compelling interest, as it targets minority religious expression without evidence of disruption or harm." (Pl.'s Resp., at 8.) He also argues that the school board "did not explore less restrictive alternatives, such as adopting and *executing* a neutral policy governing all banners in public forums." (*Id.* at 9.)

At the motion to dismiss stage, the Court must, of course, accept the allegations in the complaint as true. Here, Reverend Stevens has sufficiently alleged that he "has engaged in the exercise of religion; and 2) that the government has substantially burdened this religious exercise." *Warner*, 64 F. Supp. 2d at 1281. Reverend Stevens alleges that the Church of Satanology "mandate[s] that members engage in public forums to promote the constitutional principles of the First Amendment," and as such "viewing public displays—such as banners—[are] vital expressions of [the Church's] religious philosophy." (Amended Compl., ¶ 7.) Moreover, "[f]or adherents, displaying banners with messages advocating for religious freedom and First Amendment principles is a form of sacred observance, deeply and doctrinally rooted in The Church's belief that such advocacy is a moral and spiritual obligation." (*Id.*)

Therefore, Reverend Stevens has adequately alleged that he "has engaged in the exercise of religion." *Warner*, 64 F. Supp. 2d at 1281. The school board's arguments as to the lack of evidence regarding the Church's tenets are better addressed on a motion for summary judgment or at trial, not on a motion to dismiss. And by preventing Reverend Stevens from displaying these banners, the school board has allegedly "substantially burdened this religious exercise." *Id.*

In its motion, the school board only argues that Reverend Stevens cannot plead the elements of a FRFRA claim for which he has the burden. *See* Def.'s Mot., at 5 ("As discussed below, Plaintiff has not demonstrated he has engaged in the exercise of religion. If that element has not been established, then the Court cannot analyze whether the government has substantially burdened this claimed religious exercise." (citing *Warner*, 64 F. Supp. 2d at 1281)). The school board's arguments as to its compelling state interest will not be considered given that they were only made in the reply and "not raised in the motion itself." *U.S. Sugar Corp. v. Commerce & Indus. Ins. Co.*, Civil Action No. 22-21737-Civ-Scola, 2024 WL 5040843 (S.D. Fla. Dec. 9, 2024) (citation omitted).

Therefore, the school board's motion to dismiss the FRFRA claim (Count I) is denied.

### C. Whether Reverend Stevens States a Claim for Violation of the First Amendment

Reverend Stevens alleges that "[b]y denying Plaintiff's banner, Defendant engaged in unconstitutional viewpoint discrimination" because "[s]electively allowing religious messages from organizations such as Potter's House while denying Plaintiff's message constitutes a violation of viewpoint neutrality." (Amended Compl., ¶¶ 32, 35.) Reverend Stevens thus brings a First Amendment claim under 42 U.S.C. § 1983 (Count II).

The school board believes that Count II should be dismissed, for three reasons. First, it points out that the school board's official policy, Advertising Board Policy 6300 (which is attached to Reverend Stevens's complaint), prohibits all advertisements with religious or political content. (Def.'s Mot., at 8.) Thus, the school board's official policy is to not engage in viewpoint discrimination—and a school board is only liable for its official policies. (*Id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1027 (11th Cir. 2001) (en banc).) Second, the school board argues that it does not have a practice or custom of allowing religious banners and that Reverend Stevens did not identify an official with final decision-making authority who violated his First Amendment rights. (*Id.* at 8-9.) Third and finally, the school board argues that its policy of "categorically prohibit[ing] religious speech . . . is constitutionally permissible." (*Id.* at 11-12 (citations omitted).)

The Court concludes that Reverend Stevens has stated a claim for viewpoint discrimination.

The school board has arguably created a limited public forum at its schools by allowing some advertisements to be displayed on school grounds. "[G]overnmental entities establish limited public forums by opening property limited to use by certain groups or dedicated solely to the discussion of certain subjects." *McDonough v. Garcia,* 116 F.4th 1319, 1328 (11th Cir. 2024) (quoting *Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. Of the L. v. Martinez,* 561 U.S. 661, 679 n.11 (2010)). The creation of a limited public forum is constitutionally permissible, and "the government 'may impose restrictions on speech that are reasonable and viewpoint-neutral.'" *Id.* (quoting *Christian Legal Soc'y,* 561 U.S. at 679 n.11).

For a restriction to be viewpoint neutral, "the 'government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction.'" *Moms for Liberty-Brevard Cnt'y Fl. v. Brevard Public Schls.,* 118 F.4th 1324, 1332 (11th Cir. 2024) (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.,* 515 U.S. 819,

829 (1995)). Restrictions are reasonable when they are "wholly consistent with the government's legitimate interest in preserving the property for the use to which it is lawfully dedicated, and prohibited speech must be naturally incompatible with the purposes of the forum." *Id.* (cleaned up).

"Municipalities like the School Board may only be held liable under § 1983 if 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" *Khoury v. Miami-Dade Cnty. Sch. Board*, 4 F. 4th 1118, 1131 (11th Cir. 2021) (quoting *Monell v. Dept. of Social Srvs.*, 436 U.S. 658, 691 (1978)). Such liability, known as *Monell* liability, can be established in one of three ways: by "(1) identifying an official policy; (2) identifying an unofficial custom or widespread practice that is so permanent and well settled as to constitute a custom and usage with the force of law; or (3) identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Chabad Chayil, Inc. v. School Board of Miami-Dade County, Florida*, 48 F.4th 1222 (11th Cir. 2022) (citation omitted).

As alleged, the school board's policy is to prohibit "facilities owned or leased by the School Board" to be "used for advertising or otherwise promoting the interests of any commercial, religious, political or other non-district agency or organization . . . ." (Amended Compl. ¶ 18.) Such policy is facially viewpoint neutral, and Reverend Stevens does not argue that such policy is unreasonable. In fact, Reverend Stevens concedes that "remov[ing] all religious banners and displays from school properties district-wide" would "ensure compliance with First Amendment requirements for neutrality and to prevent viewpoint discrimination." (*Id.* ¶ 50.)

But the school board runs into a problem because "[m]unicipal liability may be based on, among other things, 'a practice or custom that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker.'" *Khoury*, 4 F.4th at 1131 (cleaned up). "[A] plaintiff may establish a policy or custom exists by showing a 'persistent and wide-spread practice' and the government's actual or constructive knowledge of that practice." *Id.* (citation omitted). The school board believes that three to four instances of religious banners in the 300 schools in the Broward County school district "do not equate to a persistent and widespread practice." (Def.'s Mot., at 9 (citing *Khoury*, 4 F.4th at 1131).)

It is true that "[g]enerally, random acts or isolated incidents are insufficient to establish a custom or policy." *Khoury*, 4 F.4th at 1131. However, *Khoury*—relied upon by the school board—was decided on a motion for summary judgment. At the motion to dismiss stage, the Court must construe all inferences in favor of Reverend Stevens. Therefore, the Court concludes that the instances cited in the complaint plausibly allege "a practice or custom" of

viewpoint discrimination by the school board "that is so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker." *Id.* In other words, while the incidents cited by Reverend Stevens *may* be insufficient on a motion for summary judgment or at trial, they are sufficient to survive a motion to dismiss.

Finally, the school board is incorrect that Reverend Stevens cannot support a *Monell* claim "[b]ecause he failed to identify an individual policymaker." (Def.'s Mot., at 9.) It is that a "practice or custom" becomes "so pervasive, as to be the functional equivalent of a policy adopted by the final policymaker," that sustains a *Monell* claim. *See Koury*, 4 F.4th at 1131. A plaintiff is not required to identify the final policymaker. The school board's reliance on *Chabad* fails because there, the plaintiff was not attempting to use an "unofficial custom or widespread practice" to establish *Monell* liability. *See Chabad*, 48 F. 4th at 1229. Instead, the plaintiff was seeking to establish *Monell* liability by "identifying a municipal official with final policymaking authority whose decision violated the plaintiff's constitutional rights." *Id.* (citation omitted). That is one way to establish *Monell* liability. *See id.* (citation omitted). But it is not the only way. Nor is it the way that Reverend Stevens seeks to do so.

The school board also argues that Reverend Stevens (1) fails to state a claim for an Establishment Clause violation and (2) even if he does, he does not have standing to bring said claim. (Def.'s Mot., 10-15.)

To the extent that Reverend Stevens's First Amendment claim is brought as an Establishment Clause claim, rather than a Free Exercise Clause claim, the school board has not established that it should be dismissed. The Establishment Clause "mandates government neutrality between religion and religion, and between religion and nonreligion.*" Jarrad v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1317 (11th Cir. 2024) (quoting *McCreary Cnty. v. ACLU of Ky.*, 545 U.S. 844, 860 (2005)). The school board argues that under *Lemon v. Kurtzman*, 403 U.S. 602 (1971), Reverend Stevens' Establishment Clause claim fails and should be dismissed. (Def.'s Mot., at 10-12.). But as the school board later acknowledged in a notice of supplemental authority, the Supreme Court has replaced the *Lemon* test with one that focuses on "historical practices and understandings." (ECF No. 29, Def.'s Notice of Supplemental Authority (quoting *Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 535 (2022).) Despite its notice of supplemental authority, the school board does not attempt to show that any Establishment Clause claim by Reverend Stevens is insufficient under the Supreme Court's new Establishment Clause standard.

Reverend Stevens also has standing to bring an Establishment Clause claim. To have standing, Reverend Stevens must "demonstrate an injury in

fact, that the injury is fairly traceable to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennet v. Spear*, 520 U.S. 154, 162, 117 S.Ct. 1154, 1161 (1997) (cleaned up). "For Establishment Clause claims based on non-economic harm, the plaintiffs must identify a 'personal injury suffered by them as a consequence of the alleged constitutional error, other than the psychological consequence presumably produced by observation of conduct with which one disagrees.'" *Glassroth v. Moore*, 355 F.3d 1282, 1292 (11th Cir. 2004) (quoting *Valley Forge Christian Coll. v. Ams. United for Sep. of Church & State, Inc.*, 454 U.S. 464, 485 (1982)). "[P]laintiffs have standing if they are directly affected by the practices against which their complaints are directed." *Id.* (cleaned up.)

The school board claims that Reverend Stevens does not have standing because the mere "psychological consequences from viewing an offending banner are insufficient," he is not a student at a Broward County school, nor is he a parent of a child at any Broward school. (Def.''s Mot., at 13-15.) But this mischaracterizes Reverend Stevens's claim. Sure, he claims that the school board's actions "marginalize" his beliefs, "and signal to the community that certain religious perspectives are favored over others." (Pl.'s Mot., at 2.) But the *actions* he is referring to are not generalized actions of the school board putting up religious banners; it is putting up some religious banners while declining to display *his* religion's banners. He thus does not merely allege psychological consequences of viewing the school board's allegedly unconstitutional conduct. *See Valley Forge*, 454 U.S. 464, 483, 485, 102 St. 752 (1982). He has suffered a personal injury that will likely be redressed by a favorable outcome— specifically, prohibiting the school board from putting up some religious banners while choosing not to put up his religion's banners. *See Glassroth*, 335 F.3d at 1292-93.

The school board's motion to dismiss Count II is denied.

### D. Whether Reverend Stevens Has Stated a Claim Under Florida Statute § 871.04

Reverend Stevens also brings a cause of action under Florida Statute § 871.04, which prohibits certain religious discrimination in advertising. The school board argues that Reverend Stevens does not allege a violation of the statute. (Def.'s Mot., at 12.) Reverend Stevens does not respond to this part of the school board's motion. Therefore, the Court finds that Reverend Stevens has abandoned this claim. *See Jones v. Bank of Am.*, 564 F.App'x 432, 434 (11th Cir. 2014) ("A party's failure to respond to any portion or claim in a motion indicates such portion, claim or defense in unopposed." (citation omitted)).

In any event, Reverend Stevens fails to state a claim under Florida Statute § 871.04. Under the statute,

> No person, directly or indirectly, for herself or himself or for another, shall publish, post, broadcast by any means, maintain, circularize, issue, display, transmit, or otherwise disseminate or place in any manner before the public with reference to an establishment any advertisement that the patronage of any person is not welcome, or is objectionable, or is not acceptable because of the person's religion. No person shall cause or solicit another person to violate this section.

Florida Statute § 871.04(b). Reverend Stevens does not allege that a banner was published on school property stating that he was not welcome because he is a member of the Church of Satanology. Thus, he does not state a claim under this statute and the school board's motion to dismiss Count III is granted. Moreover, because the statute is a criminal statute that does not explicitly provide for a private cause of action, the Court will not read in a private right of action without evidence of the Florida legislature's intent to do so. *See Murthy v. N. Sinha Corp.*, 644 So.2d 983, 985 (Fla. 1994) ("[L]egislative intent . . . should be the primary factor considered by a court in determining whether a cause of action exists when a statute does not expressly provide for one." (citation omitted)).

The thrust of Reverend Stevens's complaint is that his church was prohibited from posting banners while other churches were allowed to do so. Those actions fall outside the ambit of § 871.04. Therefore, the Court finds that amendment to Count III would be futile and the count must be dismissed with prejudice. *CFPB v. Ocwen Fin. Corp.*, CASE NO. 9:17-CV-80495-MARRA, CASE NO. 9:17-CV-80496-MARRA, 2019 WL 13203852, at *19 (S.D. Fla. Sept. 30, 2019) (Marra, J.).

### E. Whether Reverend Stevens is Entitled to a Jury Trial

Reverend Stevens asks for a jury trial "on all issues so triable." (Amended Compl., at 12.) The school board believes that Reverend Stevens is not entitled to a jury trial on any issues because he "has only asked for equitable relief," and has "not asked for legal relief." (Def.'s Mot., at 15.) Reverend Stevens does not respond to the school board's argument.

The Court agrees with the school board. "There is no right to a jury trial [] when the plaintiff[] seek[s] purely equitable relief." *CBS Broadcasting, Inc. v. EchoStar Comms. Corp.*, 450 F.3d 505, 518 n.25 (11th Cir. 2005) (citation omitted). Here, Reverend Stevens only asks for a declaratory judgment and two alternative forms of injunctive relief. (Amended Compl., ¶¶ 46-51.) Therefore,

Reverend Stevens is not entitled to a jury trial. The trial scheduled for March 10, 2025, will be a bench trial.

### 4. Conclusion

For the foregoing reasons, the Court **grants in part** and **denies in part** the Defendant's motion to dismiss the amended complaint. (**ECF No. 18**.)

**Done and ordered** in Miami, Florida, on December 31, 2024.

_____
Robert N. Scola, Jr.
United States District Judge