United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| The Reverend Dr. Timothy "Chaz" Stevens, Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 24-61926-Civ-Scola |
| The School Board of Broward County, Florida, Defendant. | ) ) | |

### Order on Cross Motions for Summary Judgment

This matter is before the Court on the parties' cross motions for summary judgment. The Plaintiff, Chaz Stevens, filed a motion for summary judgment on viewpoint discrimination (ECF No. 79) and a statement of material facts (ECF No. 81), to which the Defendant, the School Board of Broward County, responded (ECF Nos. 88, 89). The School Board filed its own motion for summary judgment (ECF No. 93) and a statement of material facts (ECF No. 90). Stevens responded to the School Board's motion for summary judgment (ECF No. 96). There is no need for the School Board to file a reply. Because the Court agrees with the School Board that this case is now moot, the Court **grants** the School Board's motion for summary judgment (**ECF No. 93**) and **denies as moot** Stevens's motion for summary judgment (**ECF No. 79**).

1. **Background**

The Court will provide only background relevant to the mootness inquiry. Stevens brings three claims against the Defendants[1]: (1) violation of 42 U.S.C. § 1983 for First Amendment viewpoint discrimination against all defendants; (2) violation of 42 U.S.C. § 1983 for a First Amendment Establishment Clause violation against Dr. Hepburn and the defendant principals; and (3) violation of the Florida Religious Freedom Restoration Act ("FRFRA"), Fla. Stat. § 761.03, against all defendants. (ECF No. 70, Second Amended Compl.)

Stevens's claims stem from the Defendants' denial of his "request to display a 'Satan Loves the First Amendment' banner while banners from Christian organizations, such as Calvary Chapel and Potter's House, were

---

[1] On February 7, 2025, Stevens amended his complaint to add claims against individual defendants superintendent Dr. Howard Hepburn, Marjory Stoneman Douglas High School principal Michelle Kefford, and Westglades Middle School principal Matthew Bianchi. (ECF No. 70, Second Amended Compl.) The individual defendants have yet to be served.

approved." (*Id.* ¶ 2.) Stevens believes that "[t]he approval of religious banners from only certain groups demonstrates an inconsistent enforcement of policy and resulted in a religious viewpoint imbalance." (*Id.*) In Stevens's motion for summary judgment, he lists eight examples of the school board permitting religious and political banners, beginning in 2023 and ending in October 2024. (Pl.'s Mot., at 2-3.)

At the time that these banners were allowed at Broward schools, the School Board followed "Policy 6300," which was adopted in February 1970. (Def.'s Statement of Material Facts ¶ 21.) This policy stated that, "Facilities owned or leased by the School Board shall not be used for advertising or otherwise promoting the interests of any commercial, religious, political or non-district agency or organization except as permitted through Board approved agreements, School Board policies or State Statutes." (ECF No. 19-1, Policy No. 6300 at 3.)

In his operative complaint, Stevens notes that the "Christian banners were removed following media attention and legal action by" Stevens. (Second Amended Compl. ¶ 12.) And on December 28, 2024, which was a few months after Stevens filed his lawsuit, the School Board repealed Policy 6300 and replaced it with Policy 1930. This new policy states that, "[t]he display of banners on School-Board-owned properties shall not be construed as creating a public forum for political or religious expressive activity or for displaying content which does not conform to the educational mission of the School Board and community-based standards." (ECF No. 36-1, Policy No. 1930, at 1.) Moreover, "[p]rincipals, with the concurrence of the Regional Superintendent, shall decide as to whether to recognize individual sponsors with a banner/signage according to the following guidelines." (*Id.* at 5.) One such guideline is that the "Principal reserves the right to recognize a sponsor by displaying a banner/signage or remove the banner/signage for any sponsor if it is inconsistent with the educational mission of The School Board or it has or is likely to cause a disruption in the operation of the school." (*Id.*) The policy then specifically lists as "[e]xamples of inappropriate sponsorship banners/signages [as] include[ing] "but not limited to: "churches; organizations which as its primary function furthers, promotes or seeks to establish a religious tenet or position about religion or spirituality including agnosticism, atheism or satanism[.]" (*Id.*) The school board enacted Policy 1930 "[t]o make the school board policy clearer regarding banners with local community partners[.]" (ECF No. 91-2, Second Decl. of John Sullivan, School Board Chief Communications and Legislative Affairs Officer, ¶ 8.)

## 2. Legal Standard

Summary judgment is proper if, following discovery, the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id. at 1260*. All the evidence and factual inferences reasonably drawn from the evidence must be viewed in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004).

Once a party properly makes a summary judgment motion by demonstrating the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 323-24. The nonmovant's evidence must be significantly probative to support the claims. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court will not weigh the evidence or make findings of fact. *See id.; Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003). Rather, the Court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party. *Id.* "If more than one inference could be construed from the facts by a reasonable fact finder, and that inference introduces a genuine issue of material fact, then the district court should not grant summary judgment." *Bannum, Inc. v. City of Fort Lauderdale*, 901 F.2d 989, 996 (11th Cir. 1990).

## 3. Analysis

The parties move for summary judgment on multiple grounds. Amongst other grounds, the School Board believes that the claims against it became moot after the School Board's repealed Policy 6300 and enacted Policy 1930. Because the Court agrees, the Court grants the School Board's motion and dismisses the case.

### A. The Court's Jurisdiction

A federal court does not have jurisdiction over any issue two parties may have with one another. "Article III of the Constitution limits the jurisdiction of

the federal courts to the consideration of 'Cases' and 'Controversies.'" *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1281 (11th Cir. 2004) (citation omitted). This "cases and controversies" "constraint imposes on federal courts a 'dual limitation' known as justiciability.'" (*Id.*) (citation omitted).

"The doctrine of mootness derives directly from the case-or-controversy limitation because an action that is moot cannot be characterized as an active case or controversy." *Id.* at 1282 (citation omitted). Specifically,

> A case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome. As this Court has explained, put another way, a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief. If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed. Indeed, dismissal is required because mootness is jurisdictional. Any decision on the merits of a moot case or issue would be an impermissible advisory opinion.

*Id.* (cleaned up). This Court must take the justiciability requirement seriously, because it "goes to the heart of our constitutional doctrine of the separation of powers and the proper role of the judiciary." *Id.*

Here, the School Board thinks that Stevens's claims against it are moot because it "has in place an updated policy that bans all religious and political signage with added oversight to ensure compliance." (Def.'s Mot., at 5.) Therefore, according to the School Board, it has "voluntarily reinforced the policies [Stevens] seeks to enjoin." (*Id.* at 6.)

Stevens disagrees, arguing that "[t]he Supreme Court has held that voluntary cessation does not moot a claim unless the defendant proves the unlawful conduct will not recur." (Pl.'s Mot., at 5 (citing *Friends of the Earth v. Laidlaw Envtl. Servs, Inc.*, 528 U.S. U.S. 167, 190 (2000)).) Stevens contends that "[n]ew evidence confirms continued enforcement disparities, as additional banned banners remained displayed" after the School Board updated its policy, and that the School Board "has not produced any sworn certification confirming full policy compliance, raising further concerns about ongoing selective enforcement." (*Id.* at 5-6.) He thus believes that the School Board has "failed to meet" its burden with respect to the voluntary cessation doctrine. (Pl.'s Resp., at 3.)

Ordinarily, the voluntary cessation doctrine "provides an important exception to the general rule that a case is mooted by the end of the offending

behavior." *Troiano*, 382 F.3d at 1282. In other words, the "mere voluntary cessation of allegedly illegal conduct does not moot a case," because "if it did, the courts would be compelled to leave the defendant free to return to his old ways." *Id.* at 1282-83 (citing *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203, 89 S.Ct. 361, 364, 21 L.Ed.2d 344 (1968) (cleaned up)).

"However, there is an important exception to this important exception, when there is no reasonable expectation that the voluntarily ceased activity will, in fact, actually recur after the termination of the suit." *Id.* at 1283 (citing *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953)). And when the defendant is "a government actor, there is a rebuttable presumption that the objectionable behavior will *not* recur." *Id.* 1283 (citations omitted). In fact, "[w]hen government laws or policies have been challenged, the Supreme Court has held almost uniformly that cessation of the challenged behavior moots the suit." (*Id.*) (collecting cases). This is because "[c]ourts are more likely to trust public defendants to honor a professed commitment to changed ways[.]" *Id.* (citation omitted).

In *Troiano*, the Eleventh Circuit summarized numerous instances in which it found moot claims against government defendants after the government either repealed and replaced a challenged policy and/or when the government stopped engaging in the challenged conduct. In *Jews for Jesus v. Hillsborough County Aviation Authority*, 162 F.3d 627, 629 (11th Cir. 1998), the Eleventh Circuit found that the case was moot when the at-issue policy "ha[d] been replaced by a new policy that 'appear[ed] to have been the result of substantial deliberation' on the part of the alleged wrongdoers and ha[d] 'been consistently applied' in the recent past." *Troaino*, 382 F.3d at 1284 (quoting *Jews for Jesus*, 162 F.3d at 629). And in *Saladin v. Milledgeville*, 812 F.2d 687, 693 (11th Cir. 1987), the Eleventh Circuit found moot a case where the plaintiffs objected to the word "Christianity" as part of the city seal after "[t]he city stopped displaying the seal sometime after the litigation began." *Troaino*, 382 F.3d at 1284 (citing *Saladin*, 812 F.2d at 693).

So, to summarize: "a challenge to a government policy that has been unambiguously terminated will be moot in the absence of some reasonable basis to believe that the policy will be reinstated if the suit is terminated. In the absence of any such evidence, there is simply no point in allowing the suit to continue and [the Court lacks the] power to allow it to do so." *Id.* at 1285.

Thus, Stevens is incorrect that it is the School Board's burden to show that the voluntary cessation doctrine does not apply. Rather, it is Stevens's burden to show that it *does* apply. Applying these principles here, the Court finds that this case is now moot. The School Board repealed Policy 6300 and

replaced it with Policy 1930 "[t]o make the school board policy clearer regarding banners with local community partners[.]" (Second Decl. of John Sullivan ¶ 8.) The new policy explicitly tells school officials that banners associated with churches and religious organizations are inappropriate, (*See* Policy No. 1930, at 5), while the previous policy was not as clear. (*See* Policy No. 6300 ("Facilities owned or leased by the School Board shall not be used for advertising or otherwise promoting the interests of any commercial, religious, political or non-district agency or organization *except as permitted through Board approved agreements, School Board policies or State Statutes.*" (emphasis added).) The new policy was a result of a deliberative process that started in September 2024 with the opportunity for public comment. (*See* Second Decl. of John Sullivan ¶ 7; ECF No. 19-1 at 13-18 (notices from School Board that it was engaging in rule-making process).) Stevens admits that the School Board "issued a directive to remove all religious banners" after the lawsuit was filed. (Pl.'s Mot., at 4.) In his operative complaint, Stevens notes that the "Christian banners were removed following media attention and legal action by" Stevens. (Second Amended Compl. ¶ 12.) Stevens's last cited offending banner was from October 2024, the month after litigation commenced and two months before the new policy was put in place. (Pl.'s Mot., at 2-3.) Stevens has not cited one instance of alleged misconduct or violation of the new policy since it was implemented in December 2024.

In other words, the new policy—and Stevens's filing of the lawsuit—has worked. Stevens requests injunctive relief prohibiting Broward schools from allowing banners from religious organizations to be posted on school grounds. (Second Amended Compl. ¶ 22; *see generally* ECF No. 20, Amended Mot. for Temporary Restraining Order and Preliminary Injunction.) Stevens has not shown that there are currently banners with religious affiliations placed at Broward schools; the School Board has taken the ones Stevens has cited down; and the Board enacted a new policy to make its policy clearer. Given these facts, and that the School Board is a government actor, Stevens has not rebutted the presumption that the School Board has acted in good faith and will not repeat its alleged misconduct. He thus has not given the Court a reasonable basis "to believe that the [allegedly unconstitutional policy will be reinstated if the suit is terminated." *Troiano*, 382 F.3d at 1285. Under these circumstances, the Court finds that Stevens's claims for injunctive relief are moot. In essence, Stevens received what he wanted—a ban on religious signage at Broward schools. There is no live case or controversy.

### B. Whether the Entire Case is Moot

The next question for the Court is whether the entire case is moot. In his operative complaint, Stevens seeks monetary damages. (Second Amended Compl. ¶ 22.) However, when Stevens sought to amend his complaint after the deadline to do so (which the Court allowed him to do), he only requested to add claims against the principals and Dr. Hepburn in their official capacities. (Pl.'s Mot. to Amend, ECF No. 60). He did not request amendment to also seek monetary damages in addition to the injunctive relief that he requested his then operative, first amended complaint. (*See generally id.*) It was thus inappropriate for Stevens to add a request for monetary damages. Therefore, the Court strikes the request for monetary damages from the operative complaint because it is not in compliance with the Court's order allowing Stevens to amend his complaint. (*See* ECF No. 62.) The Court has been extremely lenient with Stevens throughout this litigation, as it should be given his *pro se* status. But had Stevens asked to amend his complaint to add monetary damages, it would have denied that request given that he was able to ask for such relief when he filed the litigation and amended his complaint once as of right, but did not do so.

One other issue is that the School Board states only that "Count III fails for mootness." (Def.'s Mot., at 5.) But "[g]iven that issues of justiciability implicate this Court's subject matter jurisdiction, it is the Court's obligation to raise it *sua sponte*." *Liberty Surplus Ins. Co. v. Kaufman Lynn Constr., Inc.*, 658 F.Supp.3d 1329, 1245 (S.D. Fla. 2023) (Middlebrooks, J.). Stevens has had the opportunity to argue that the facts before the Court do not merit dismissing the case as moot. (*See* Pl.'s Mot., at 5-6; Pl.'s Resp., at 3.) With respect to mootness, the Court has the same concerns with Counts I and II as it does with Count III. Therefore, the Court finds that Counts I and II—which also seek prospective, injunctive relief—are moot. The Court does not have subject matter jurisdiction over those counts either.

### 4. Conclusion

For the foregoing reasons, the Court **grants** the School Board's motion for summary judgment (**ECF No. 93**) and finds that the entire case has been mooted by the School Board's enactment of Policy 1930. Therefore, the case is dismissed without prejudice. The Court directs the clerk to **close** this case and **deny** any other motions as **moot**. The calendar call and bench trial in this case are cancelled.

**Done and ordered** at Miami, Florida on March 20, 2025.

_____
Robert N. Scola, Jr.
United States District Judge